UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:14-CV-00017-GNS-LLK

JONI D. JELLETICH                                                                          PLAINTIFF

V.

RHONDA J. PAWLAKSI and
BOBBY PAWLAWSKI                                       DEFENDANTS/THIRD-PARTY PLAINTIFFS

V.

BRECK JELLETICH                                                               THIRD-PARTY DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion Concerning the Defendant's Use of Money Held as a Fiduciary to Pay Attorney's Fees filed by Plaintiff Joni D. Jelletich ("Jelletich") (DN 44). Alternatively, Jelletich requests the removal of the trustee of the Dancliff Family Trust. The motion has been fully briefed by the parties. For the reasons outlined below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. SUMMARY OF FACTS AND CLAIMS**

Jelletich and Defendant Rhonda J. Pawlawski ("Pawlawski") are the daughters of the late Lorna J. Dancliff ("Dancliff"). Jelletich filed this lawsuit against Pawlawski and her husband to contest estate planning documents executed by Dancliff late in her life. (Compl., DN 1). In response, Defendants asserted a counterclaim against Jelletich and filed a Third-Party Complaint against Jelletich's husband. (Answer, Countercl. & Third-Party Compl., DN 6).

1

On January 5, 2007, Dancliff and her late husband executed the Dancliff Family Trust for themselves and the benefit of their three children—including Jelletich and Pawlawski. (Compl. Ex. A, DN 1-1). Initially, both Dancliff and her husband served as Co-Trustees. On January 7, 2008, Dancliff executed a power of attorney in which she designated Pawlawski as her attorney-in-fact. (Compl. Ex. F, DN 1-6).

Following the death of Dancliff's husband, she executed several amendments to the Dancliff Family Trust. On January 8, 2008, Dancliff executed the first amendment in which she named Pawlawski as Co-Trustee. (Third-Party Def.'s Mot. To Dismiss, Ex. A, DN 16-1). On March 4, 2008, Dancliff executed the second amendment to the Dancliff Family Trust in which she eliminated her third child as a beneficiary, and designated Jelletich and Pawlawski as co-equal beneficiaries of the trust estate. (Compl. Ex. A-B, DN 1-1, 1-2).

When Dancliff's husband died in January 2008, she relocated from Utah to Arizona to live with Jelletich. (Compl. ¶ 16). In the summer of 2009, Dancliff underwent a clinical neurological evaluation, and was diagnosed with moderate dementia impairment. (Compl. ¶¶ 18-19). In the summer of 2010, Dancliff traveled to Kentucky to visit Pawlawski and never returned to Arizona. (Compl. ¶ 21). The parties contest whether Dancliff remained in Kentucky under her own free will.

On September 13, 2010, Dancliff executed the third amendment to the Dancliff Family Trust, which removed Jelletich as a beneficiary of the trust and left the residuary of the estate to Pawlawski. (Compl. Ex. D, DN 1-4). On June 17, 2011, Dancliff executed the Fourth Amendment to the Trust in which Dancliff was removed as Co-Trustee and Pawlawski was designated as the sole Trustee. (Compl. Ex. D). On October 10, 2013, Dancliff died. (Compl. ¶ 7).

On January 30, 2014, Jelletich filed this action asserting various claims against Pawlawski and her husband. Pawlawski and her husband then asserted counterclaims against Jelletich and filed a Third-Party Complaint against Jelletich's husband.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. There is complete diversity of the parties, and the amount in controversy exceeds the jurisdictional limit of this Court. (Compl. ¶ 9).

## III. DISCUSSION

Plaintiff's motion raises two issues: (i) whether Pawlawski may continue to pay attorneys' fees and costs from the Dancliff Family Trust; and (ii) alternatively, whether there are grounds to remove Pawlawski as trustee. These issues are addressed separately below.

### A.  Payment of Attorneys' Fees and Costs

In general, a trustee's powers derive from the trust agreement or statute. *See, e.g.*, KRS 386B.8-150 (outlining the general powers of a trustee). In addressing the issue of whether attorneys' fees and costs are payable from the Dancliff Family Trust, the Court must consider whether the trust instrument permits the trustee's attorneys' fees and expenses to be paid from the trust estate. In addition, the Court must consider whether there is any other legal basis for or any impediment to the reimbursement of attorneys' fees in this case in light of the American Rule otherwise applicable to judicial proceedings. *See Sumner v. Armstrong Coal Co.*, No. 3:11-CV-425-H, 2014 WL 4063492, at *6 (W.D. Ky. Aug. 15, 2014) (citation omitted).

In interpreting the trust agreement, Kentucky courts[1] seek to determine the grantor's intent from the trust instrument. *See* Benjamin v. JP Morgan Chase Bank, N.A., 305 S.W.3d 446, 451 (Ky. App. 2010) ("The most basic rule of [] interpretation is that the testator's intent must be the 'polar star' toward which all interpretive efforts are guided, and this intent will be controlling, absent some illegality." (citation omitted)); *Dep't of Rev. v. Ky. Tr. Co.*, 313 S.W.2d 401, 404 (Ky. 1958) (holding that the same rules of construction apply to trusts and wills).

In opposing Jelletich's motion, Defendants rely upon two separate provisions of the Dancliff Family Trust—Article VII and Article IX. Article VII outlines the general powers of the trustee and provides, in relevant part:

> To carry out the purposes of any trust created under this instrument and subject to any limitations stated elsewhere in this instrument, the Trustee is empowered to do all things appropriate for the orderly administration of the trust estate subject to the Trustee's power and control, unless otherwise provided herein.
> A.  STATUTORY POWERS
> Without limiting this general power, and without limitation of other powers hereby granted or otherwise possessed by the Trustee, including those specified in the Utah Uniform Trust Code, Utah Code Ann. § 75-7-813, as amended, the Trustee shall have the following powers and discretion which the Trustee shall exercise in such manner and upon such terms and conditions as the Trustee shall deem necessary, desirable or convenient:
> . . .
> 14.   Claims. Pay or contest any claim, settle a claim by or against the trust, and release, in whole or in part, a claim belonging to the trust;

---

[1] Neither party addressed the issue of applicable law relating to the interpretation of the Dancliff Family Trust or the choice of law provision in the trust agreement. Instead, they have relied solely upon Kentucky law despite Article XIV of the trust which provides that Utah law shall apply. "In federal diversity actions, state law governs substantive issues . . . ." *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002). Kentucky courts apply the "most significant contacts" test to contract disputes. *See Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982). Kentucky courts have "a strong preference for applying Kentucky law." *Sierra v. Williamson*, No. 4:10-CV-00079-TBR, 2013 WL 3456988, at *2 (W.D. Ky. July 9, 2013). Without ruling on whether Kentucky law would apply, the Court will apply Kentucky law because the parties have implicitly agreed that it applies. In addition, there appears to be no significant differences between Kentucky and Utah law with respect to the issues raised in the pending motion.

> . . .
> 24. Litigation. Prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties . . . .

(Compl. Ex. A, DN 1-1). The other trust provision cited by Defendants is Article IX. While only briefly quoted by Defendants, that provision provides, in relevant part:

> In the event any beneficiary under this trust shall, singularly or in conjunction with any other person or persons, contest in any court the validity of this trust or of a Trustor's Last Will or shall seek to obtain an adjudication in any proceeding in any court that this trust or any of its provisions or that such Will or any of its provisions is void, or seek otherwise to void, nullify, or set aside this trust or any of its provisions, then the right of that person to take any interest given to him by this trust shall be determined as it would have been determined had the person predeceased the execution of this trust instrument without surviving issue.
> The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions.

(Compl. Ex. A, DN 1-1). Thus, as reflected by the language of trust agreement, the trust instrument generally permits the payment of the Trustee's attorneys' fees and costs.

Even if the Court were to look outside of the trust agreement, Kentucky law would permit a trustee to be reimbursed for her attorneys' fees and costs relating to her performance as trustee. KRS 386B.10-040 provides that "[i]n a judicial proceeding involving the administration of a trust, the court may, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." KRS 386B.10-040.[2]

This issue, however, is not that simple as Defendants would make it out to be. This case also involves serious allegations of misconduct that Defendants allegedly exercised undue

---

[2] Utah has adopted the same statute, which is part of the Uniform Trust Code. *See* Utah Code Ann. § 75-7-1004(1). A similar approach is reflected in the Restatement of Trusts. *See* Restatement (Second) of Trusts § 246 (2014); Restatement (Third) of Trusts § 88 cmt. d (2007). Thus, the right to reimbursement is equitable in nature and not absolute.

influence over Dancliff, which resulted in her removing Jelletich as a beneficiary and co-trustee. The alleged exercise of undue influence occurred at a time when Dancliff apparently may have been suffering from some degree of mental illness.

The payment of attorneys' fees and costs from the Dancliff Family Trust is further complicated by the fact that the allegations in the Complaint raise claims against Pawlawski in both her individual and official capacities as well as against her husband. Even if the Court were to accept Pawlawski's arguments opposing the motion, she would not be entitled to pay all of the attorneys' fees and costs from the trust corpus under the trust instrument because part of those expenses must relate to the claims asserted against Pawlawksi and her husband individually.

In light of the amount of money that Pawlawski has apparently distributed to herself from the Dancliff Family Trust and the amount of attorneys' fees and costs already incurred in this case, the Court concludes Pawlawski is not entitled to pay any further attorneys' fees and costs from the trust corpus without leave of the Court.[3] Accordingly, the Court will grant the motion, and Pawlawski shall not pay any further attorneys' and costs from Dancliff Family Trust without leave of the court.

In Pawlawski's response, she states that "[t]he proper question is whether the Defendant should be prohibited from paying her attorneys with trust funds, despite the fact that the trust specifically empowers the Defendant to do just that." (Resp. to Pl.'s Mot. to Address Attorney's Fees 7, DN 47). As one treatise has noted, however, "if the trustee employs an attorney for the trustee's own benefit and not for that of the trust, the trustee is personally liable for the attorneys' fees and is not entitled to reimbursement from the trust estate." 3 Austin Scott et al, *Scott and*

---

[3] Of course, if Pawlawski ultimately prevails, then she will have the entirety of the remaining corpus to pay her attorneys' fees and expenses, and then to distribute the residuary to herself. The Court's present ruling is intended to preserve the remaining trust corpus pending the resolution of this lawsuit.

*Ascher on Trusts* § 18.1.2.4, at 1289 (5th ed. 2007). Thus, Pawlawski's assertion that she can pay her litigation expenses from the Dancliff Family Trust is not limitless and is subject to judicial review.

In the motion, Jelletich asserts that Pawlawski is presently paying her and her husband's attorneys' fees from the trust estate and is thereby dissipating the funds that Jelletich may ultimately be entitled to if she were to prevail in this action. It is also significant that Plaintiff's claims against Pawlawski are broader in scope than just being claims against Pawlawski for her alleged malfeasance in her capacity as trustee. Thus, to the extent that Pawlawski is liable for the claims relating to the non-trust related claims (i.e., undue influence, tortious interference with expectancy, civil conspiracy, misconduct as Dancliff's attorney-in-fact, etc.), she might not be entitled to payment of her attorneys' fees and costs from the trust.[4]

Ultimately, the decision whether to pay a trustee's attorneys' fees and costs from the trust estate is left to the sound discretion of this Court. See 3 Scott, *supra*, § 18.1.2.4, at 1290 ("[T]he question of the trustee's indemnification ultimately lies within the sound discretion of the trial court."). Based upon the allegations raised in the Complaint and the circumstances in this case, the Court will grant Jelletich's motion, and Pawlawski shall not pay any further attorneys' fees and costs—whether those relating to claims asserted against her or her husband.[5]

---

[4] To the extent that the trust has paid all of Pawlawski and her husband's attorneys' fees and costs in defending all claims asserted against her, she has done so at her own peril because she could be required to reimburse the trust for attorneys' fees and costs for claims wholly unrelated her actions as trustee. Likewise, Pawlawski's husband may be liable to the trust to repay any attorneys' fees and costs paid on his behalf because he is not a trustee.

[5] Upon a motion at the appropriate juncture, the Court will determine whether Pawlawski and her husband may have to reimburse attorneys' fees and costs paid from the trust corpus or whether Pawlawski will be permitted to pay any further attorneys' fees and costs from the Dancliff Family Trust. In addition, both Kentucky and Utah law would permit the Court to make an award of attorneys' fees and costs to Jelletich. *See* KRS 386B.10-040; Utah Code Ann. § 75-7-1004(1).

## B. Removal of Trustee

In the alternative, Plaintiff requests the removal of Pawlawski as Trustee of the Dancliff Family Trust. In addressing this issue, there is a choice of law issue. Under Kentucky law, a court may remove a trustee on the following grounds:

- (a) The trustee has committed a breach of trust;
- (b) Lack of cooperation among cotrustees substantially impairs the administration of the trust;
- (c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries;
- (d) There has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available . . . .

KRS 386B.7-060(2)(a)-(d).[6] At this stage of the case, however, the Court believes it is premature to remove the Trustee given the factual issues in dispute. To remove the Trustee, the Court would necessarily have to determine the merits of the claims asserted in this lawsuit, and discovery is still ongoing in this case. Accordingly, the Court will deny the alternative relief requested with leave to refile.

---

[6] In comparison, Utah law would impose a higher standard in requiring a serious breach of trust before a trustee could be removed. *See* Utah Code Ann. § 75-7-706(2).

## IV. CONCLUSION

For the reasons outlined above, IT IS HEREBY ORDERED that Plaintiff Joni D. Jelletich's Motion Concerning the Defendant's Use of Money Held as a Fiduciary to Pay Attorney's Fees (DN 44) is **GRANTED** and Defendants shall not pay any further attorneys' fees and costs from the Dancliff Family Trust without the Court's permission. The Court **DENIES** Plaintiff's motion with respect to the request for the removal the Trustee but grants leave to refile.

Greg N. Stivers, Judge
United States District Court

March 18, 2015

cc: counsel of record